**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **NS BRANDS, LTD.** | |
| **Plaintiff,** | **Case No.**  5:23-cv-00445 |
| **v.** | |
| **MASTRONARDI PRODUCE LTD. and** **MASTRONARDI PRODUCE-USA, INC.,** | |
| **Defendants.** | **JURY DEMAND** |

## COMPLAINT AND JURY DEMAND

NS Brands, Ltd. ("NatureSweet" or "Plaintiff") files this Complaint against Mastronardi Produce Ltd. and Mastronardi Produce-USA, Inc. (collectively, "Mastronardi" or "Defendant") and in support thereof alleges as follows:

**<u>INTRODUCTION</u>**

1.      The American system of free enterprise encourages and rewards creativity, innovation, investment and hard work. That system relies on fair competition, the bounds of which are protected by law and the Courts.

2.      Defendant has violated these basic tenets of fair competition by trading on the goodwill that NatureSweet enjoys among the consuming public for its market leading NATURESWEET CHERUBS brand tomatoes. That goodwill exists as a result of NatureSweet's innovation, investment, marketing and hard work over many years.

3.      NatureSweet is a creative and innovative company. It has developed premium tomato products that it markets under creative and distinctive trademarks, including trademarks related to its packaging.

4.      NatureSweet has made significant investments in the development of its premium products and innovative, distinctive marks and packaging to distinguish its products from those of its competitors.

5.      NatureSweet innovations include its distinctive package designs, one of which is comprised of a plastic two-piece configuration with a solid yellow lid, curves, a transparent dome, and a curved end.  This distinctive packaging design may create the impression of a plated heap of grape tomatoes.  An exemplary image of NATURESWEET CHERUBS brand packaging is set forth below.



6.      NatureSweet has used its distinctive packaging design since introducing its CHERUBS brand tomatoes to the market in March of 2006.  NatureSweet acquired a trademark registration covering its three-dimensional package configuration on December 25, 2007, which was assigned registration number 3,359,569.  Indeed, on this packaging, it is stated: "The package design is a trademark of NS Brands, Ltd."

7.      NATURESWEET also uses several other celestial inspired trademarks/slogans/designs in addition to CHERUBS, such as HEAVENLY SALAD TOMATOES and a Winged Grape Tomato Design trademark.

8.      The NATURESWEET trademark has been used since at least as early as 1996 and federally registered on December 12, 2000 as U.S. Trademark Registration No. 2,412,741. The CHERUBS trademark has been used since at least 2006 and federally registered on October 24, 2006 as U.S. Trademark Registration No. 3,164,061.  The Winged Grape Tomato Design trademark was used since 2006 and federally registered on July 10, 2007 as U.S. Trademark Registration No. 3,262,789.

9.      NATURESWEET CHERUBS tomatoes have been sold in their distinctive package design since as early as 2006 and have had remarkable success in the marketplace.

10.      In 2012, Defendant introduced its competing grape tomato package. NatureSweet filed a lawsuit against Defendant on May 22, 2012 in the Northern District of Texas. Case 3:12-cv-01424-G-BN. The matter was concluded in January of 2014.

11.      Subsequent to the lawsuit mentioned in paragraph 10 above, Defendant sold grape tomatoes in the following top-seal packaging emphasizing the color green throughout the United States and including the State of Texas.



12.      On its website at www.sunsetgrown.com, Defendant advertises that the top seal package of the illustration in paragraph 11 is "unique, sustainable and recyclable.  Top seal packaging uses 20-30% less plastic than ordinary clamshells." https://perma.cc/J4CZ-V2MK. Defendant also advertises that it is "in the process of testing earth-friendly and plastic free packaging, like fully recyclable paperboard and packaging you can compost in your own backyard." (*Id.*)

13.      In 2021, instead of using its current design or packaging referenced on its website, Defendant sought instead to mimic NatureSweet's packaging in an effort to increase its sales via consumer confusion.  Defendant used a package that mimicked the distinctive

CHERUBS packaging utilizes a plastic two-piece configuration that includes a solid yellow lid with curves and a transparent dome.  Defendant's 2021 package is shown below.



14.     NatureSweet filed another lawsuit against Defendant on August 2, 2021 in the Western District of Texas. Case 5:21-cv-00726-XR. The matter was concluded in January of 2022.  Defendant's 2021 package (shown above) is no longer in the marketplace.

15.     As result of NatureSweet's continued success in the marketplace for the last 15 plus years, Defendant again – now for the third time – began marketing its grape tomatoes in a package that mimics the distinctive CHERUBS packaging and utilizes a plastic two-piece configuration that includes a solid yellow lid and a transparent dome.  The package indicates that it is a "Product of Mexico."



16.     The following image was recently taken showing Defendant's grape tomatoes sold adjacent CHERUBS grape tomatoes at a common retailer.   As shown, the retailer commonly intermixes NatureSweet's CHERUBS and the Defendant's grape tomatoes in its retail display.



17.     Upon information and belief, Defendant's packaging shown in paragraph 15 will be available for purchase in every location that carries SUNSET brand ANGEL SWEET tomatoes, which includes retailers throughout the United States and Texas.

18.     Of all of the possibilities, including using the top seal packaging Defendant has used for several years, Defendant instead chose to imitate and trade on the goodwill of NatureSweet in a clear effort to cause confusion with NatureSweet's distinctive packaging design for its CHERUBS grape tomatoes.   Defendant has intentionally and unfairly attempted to trade on the goodwill of NatureSweet and confuse consumers – now for the third time.

19.     NatureSweet, its customers (and consumers, in general), are being harmed, and will continue to be harmed, by the confusing similarity between the new packaging design used for Defendant's ANGEL SWEET grape tomatoes shown in paragraph 15 above and the

distinctive packaging design used by NatureSweet's market-leading NATURESWEET CHERUBS grape tomatoes since 2006.

20.    NatureSweet prays that the Court enjoin Defendant from continuing its trademark infringement, trade dress infringement and Defendant's acts of unfair competition and dilution as set forth herein.

## THE PARTIES

21.    Plaintiff NS Brands, Ltd. ("NatureSweet") is a Texas limited partnership, having its principal office and place of business at 2338 N. Loop 1604 W., Suite 200, San Antonio, Texas 78248.  NatureSweet's distinctive packaging is set forth above in paragraph 5.

22.    Defendant Mastronardi Produce Ltd. is a Canadian corporation, having its principal place of business at 2100 Road 4 East, Kingsville, Ontario N9Y 2E5, Canada.

23.    Defendant Mastronardi Produce-USA, Inc. is a Michigan corporation, having a place of business at 28700 Plymouth Road, Livonia, Michigan 48150.  Defendant Mastronardi Produce Ltd. and Defendant Mastronardi Produce-USA, Inc. are hereinafter collectively referred to as Defendant.

24.    Defendants' grape tomatoes are available for sale in retail grocery stores throughout the United States, Texas and in the Western District of Texas.

25.    Upon information and belief, Defendants' grape tomatoes in the package of paragraph 15 are imported from Mexico to facilities of the Defendants in Texas.

26.    NATURESWEET CHERUBS brand tomatoes are also available for sale throughout the United States, Texas and in the Western District of Texas.

## NATURE AND BASIS OF ACTION

27.     This is an action for trademark infringement, trade dress infringement, and unfair competition in violation of Sections 32(1) and 43(a) of the federal Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and under the laws of the State of Texas.  Plaintiff seeks, among other things, injunctive relief, actual damages, an accounting of Defendant's profits, and recovery of Plaintiff's reasonable costs and attorneys' fees.

## JURISDICTION

28.     Plaintiff asserts the following federal claims: Count I, Federal Trademark Infringement (15 U.S.C. § 1114(1)); Count II, Trade Dress Infringement (15 U.S.C. § 1125(a)); and Count III, Federal Unfair Competition (15 U.S.C. § 1125(a)) in addition to related State law claims.

29.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and 1338, and has supplemental jurisdiction under 28 U.S.C § 1367(a) over NatureSweet's claims under Texas law.

30.     The Court has personal jurisdiction over the Defendant because Defendant has substantial or continuous and systematic contacts with the State of Texas. Defendant is registered with the State of Texas to do business in Texas.  Defendant has a registered agent located at 211 E 7th Street, Suite 620, Austin, Texas 78701-3218.

31.     Defendant also operates two facilities in Laredo, Texas that distribute Defendant's SUNSET branded tomatoes. "Mastronardi Produce, an industry-leading greenhouse pioneer that sells and markets fresh fruits and vegetables under the SUNSET® brand, today announced the opening of a new 185,000-square-foot facility in Laredo, Texas near its current distribution center." https://perma.cc/JYD8-LEQT; December 4, 2020 press

release).  Upon information and belief, Laredo, Texas represents the largest facility operated by the Defendant in the United States.  Defendant also states that this facility is designed to more appropriately service local customers and suppliers.

32.     Defendant regularly sells ANGEL SWEET branded grape tomatoes at retailers throughout Texas including at Whole Foods, Target and HEB.

33.     Defendant regularly sells the ANGEL SWEET branded grape tomatoes in the packaging shown in paragraph 15 at Whole Foods in San Antonio, Texas in the Western District of Texas.

34.     Defendant regularly conducts business in Texas, including shipping, selling, and distributing its products in Texas including Defendant's grape tomatoes under the SUNSET® brand and the ANGEL SWEET name including at locations in San Antonio, Texas.

35.     Moreover, based on the parties' lawsuits in 2012 and 2021, Defendant is fully aware of U.S. Registration No. 3,359,569 owned by NatureSweet, as well as NatureSweet's distinctive and valuable trade dress.  As such, Defendant's marketing of its grape tomatoes in a package that mimics the distinctive CHERUBS packaging and utilizes a plastic two-piece configuration that includes a solid yellow lid and a transparent dome is intended to cause harm to NatureSweet, which Defendant knows is headquartered in San Antonio, Texas.

36.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

**NatureSweet and Its Business**

37.     Founded in 1990, NatureSweet pioneered the concept of providing greenhouse grown tomatoes for broad, branded commercial distribution.

38.     NatureSweet made its first investment in greenhouses in 1994 to grow premium tomatoes for commercial distribution.

39.     By growing its tomatoes in its own greenhouses, NatureSweet is able to more accurately control quality, food safety, and environmental factors than those who outsource their growing and harvesting operations.

40.     Furthermore, by growing its tomatoes in its own greenhouses, NatureSweet is able to use less water and fertilizer, and better control the impact of external forces on growing operations, including its ability to control pests, than growers who outsource their growing and harvesting operations.

41.     Since NatureSweet's growing, harvesting and distribution processes are company-owned and/or managed, NatureSweet is able to closely monitor plant growth to choose the prime moment for tomato harvest.

42.     NatureSweet's tomatoes are allowed to reach their peak of sweetness, size, and flavor before they are harvested.

43.     Only the ripest tomatoes are harvested from the vine by NatureSweet, chosen for their color, fragrance, firmness, and weight.

44.     Unlike other producers who obtain their tomatoes from others, NatureSweet's tomatoes are grown by the company and/or by directly managed company associates. Vine-

ripening and other growing methods used by NatureSweet produce exceptional flavor and consistent quality year-round.

45.     Once the tomatoes are selected, weighed, and packed, NatureSweet carefully places them in boxes that contain specific growing and harvesting information for product traceability.

46.     As a result of its company-owned and/or managed growing, harvesting, and distribution processes, NatureSweet has been able to produce a truly premium product that is distributed through major food service operations, grocers, and club stores, and enjoyed by consumers throughout the United States.

47.     Today, NatureSweet is the leading grower of premium fresh small tomatoes, which it sells under the NATURESWEET, CHERUBS, and other brands.

48.     NatureSweet has also been innovative by developing its branded products in a category that was previously considered a commodity.

49.     Through NatureSweet's marketing and advertising campaigns, it has created a line of branded products that are sought after and recognized by consumers.

50.     As part of its branding strategy, NatureSweet has developed innovative, distinct, and creative packaging to distinguish its products from those of its competitors.  As such, NatureSweet's packaging is inherently distinctive.

51.     Prior to introduction of NatureSweet's innovative package design, fresh fruits and vegetables, including fresh tomatoes, were packaged and sold in clam shell containers, similar generic packaging or in bulk.  Since NatureSweet's innovative package design has been in the market since 2006 (*i.e.*, 17 years ago), its use of this package has been exclusive. Indeed, there is nothing similar on the market.

52.   NatureSweet was the first to develop innovative package designs that are uniquely associated with a single source.

**NatureSweet's Asserted Rights**

53.   NatureSweet developed a unique, innovative package design for its NATURESWEET CHERUBS brand tomatoes, which package design registered as a trademark under U.S. Registration No. 3,359,569, issued on December 25, 2007 (hereinafter "Trademark," **Ex. 1**):



The Trademark consists of a three-dimensional package configuration comprised of an opaque, bowl-shaped bottom and a transparent dome-like top having a bubble design effect, finished with an opaque enclosure.

54.   NatureSweet is the owner of the Trademark.

55.   Pursuant to the Lanham Act, the incontestable status of NatureSweet's U.S. Registration No. 3,359,569 constitutes *conclusive* evidence of: (a) the validity of the registered Trademark; (b) NatureSweet's ownership of the Trademark; and (c) NatureSweet's exclusive right to use the Trademark in commerce.  15 U.S.C. §§ 1057(b) and 1115(b).

56.   NatureSweet also has unregistered trade dress rights in overall look and appearance of its packaging design for grape tomatoes.  NatureSweet's overall look and appearance includes: (1) a plastic two-piece configuration with (2) a solid yellow base, (3) the lid including curved edges, (4) a transparent dome, (5) labeling placed on the end of the

transparent dome, and (6) celestial motifs presented through labeling.  NatureSweet also has unregistered trade dress rights for use with grape tomatoes in product packaging that includes use of: (1) a yellow opaque plastic lid with (2) a clear transparent plastic dome.  The foregoing shall collectively be referred to as the " Trade Dress."

57.     NatureSweet is the owner of the Trade Dress.

58.     The Trademark and Trade Dress for NATURESWEET CHERUBS brand tomatoes package design is inherently distinctive, serving to identify and indicate the source of NatureSweet's tomatoes to the consuming public, and to distinguish its products from those of others.

59.     The Trademark and Trade Dress are distinctive, non-functional, and serve to identify to consumers that the origin of the product is NatureSweet.

60.     Additionally and alternatively, as a result of NatureSweet's extensive usage and promotion over the previous 17 years, the Trademark and Trade Dress have become distinctive to designate NatureSweet's tomatoes, to distinguish NatureSweet's products from the products of others, and to distinguish the source or origin of NatureSweet's products.

61.     As a result, the Trademark and Trade Dress have become well-known and widely recognized by consumers in the State of Texas and throughout the United States to indicate the source of NatureSweet's tomatoes. The Trademark and Trade Dress are famous.

62.     Consumers know and respect the Trademark and Trade Dress as a symbol of quality, premium tomatoes.

63.     As a result of NatureSweet's extensive usage and promotion of the Trademark and Trade Dress, NatureSweet has developed valuable goodwill and strong common-law rights in the Trademark and Trade Dress.

64.     Since introduction, NatureSweet has continuously and exclusively used its Trademark and Trade Dress in interstate commerce for its relevant products in the grape tomato category.

65.     Since their introduction, NatureSweet has invested very significantly in the marketing of its products under its Trademark and Trade Dress.

66.     Since March 2006, NatureSweet has spent many millions of dollars in its advertising and promoting tomatoes using its Trademark and Trade Dress through a variety of means, including television advertising, various types of print advertising, dealer promotions, consumer promotions, the Internet, and in other ways customary to the trade.

67.     As a result of NatureSweet's efforts, consumers have come to identify and recognize the Trademark and Trade Dress as an indicator of the source of NatureSweet's tomato products.

68.     Sales of NATURESWEET CHERUBS tomatoes have exceeded several hundreds of millions of dollars in retail sales annually since 2006.   NATURESWEET CHERUBS tomatoes hold a market-leading position in the grape tomato category.

**Defendant's Activities**

69.     Defendant is in the business of growing and distributing fresh fruits and vegetables, including grape tomatoes.

70.     In 2012, Defendant's ANGEL SWEET tomatoes were marketed in a package that mimicked the distinctive CHERUBS package as shown below.



71.     NatureSweet filed a lawsuit against Defendant on May 22, 2012 in the Northern District of Texas.  Case 3:12-cv-01424-G-BN.  The matter was concluded in 2014.

72.     Subsequent to the lawsuit, Defendant sold grape tomatoes in the top-seal packaging shown in the illustration of paragraph 11 above and emphasizing the color green throughout the United States, and including the State of Texas.

73.     From 2014 until 2021, Defendant's grape tomato packaging was the top-seal packaging shown in paragraph 11.

74.     After eight years of utilizing the above described package design or paragraph 11, Defendant recently chose to alter their packaging design such that it mimics Plaintiff's distinctive Trademark and Trade Dress. In 2021, Defendant's grape tomatoes were sold in in a plastic two-piece package configuration with a solid yellow lid having curved edges, and a transparent dome with a circular end.

75.     The illustration below shows an exemplary image of the 2021 Angel Sweet grape tomato packaging.

14



76.     NatureSweet filed another lawsuit against Defendant on August 2, 2021 in the Western District of Texas. Case 5:21-cv-00726-XR. The matter was concluded in January of 2022.   Defendant's 2021 package (shown above) is no longer in the marketplace and Defendants' reverted to the packaging shown above in paragraph 11.

77.     The illustration below shows an exemplary image of the new 2023 Angel Sweet grape tomato packaging (the "infringing package" or the "infringing design.")



78.     Defendant's ANGEL SWEET grape tomatoes are sold in the same or similar channels of trade as NATURE SWEET CHERUBS brand tomatoes. Defendant's ANGEL

SWEET grape tomatoes are distributed through its Laredo facility, sold throughout Texas and the Western District of Texas, and advertised on the Internet.

79.     Upon information and belief, the grape tomatoes sold by Defendant under the ANGEL SWEET name are grown from a different plant variety than NATURESWEET CHERUBS brand tomatoes.

80.     Upon information and belief, because the Defendant's products are grown and harvested by third parties at certain times of the year, Defendant does not have control of its growing, harvesting, and distribution processes in the same way that NatureSweet has for its NATURESWEET CHERUBS brand tomatoes.

81.     Upon information and belief, the ANGEL SWEET tomatoes sold by Defendant do not have the same consistent great taste throughout the year as NATURE SWEET CHERUBS brand tomatoes.

82.     Upon information and belief, the ANGEL SWEET tomatoes sold by Defendant do not have the consistency of quality of NATURE SWEET CHERUBS brand tomatoes.

83.     Upon information and belief, the ANGEL SWEET tomatoes sold by Defendant are not of the same premium quality as NATURE SWEET CHERUBS brand tomatoes.

84.     Defendant could have used its existing packaging or selected from or developed a virtually infinite number of alternative package designs for its ANGEL SWEET product which would not be confusingly similar to NatureSweet's Trademark or Trade Dress.

85.     Defendant was aware of NatureSweet's Trademark and Trade Dress before Defendant began marketing its own products with a similar design. Defendant was aware of NatureSweet's Trademark and Trade Dress before Defendant began marketing its own products with a similar design, the infringing design.

86. Defendant intentionally chose a package design for its ANGEL SWEET grape tomato product that is confusingly similar to NatureSweet's Trademark and Trade Dress in an effort to trade on the goodwill of NatureSweet's hugely successful NATURE SWEET CHERUBS brand tomatoes and on the goodwill developed in the distinctive packaging of the NATURE SWEET CHERUBS package.

87. Defendant's use of the confusingly similar package design, the infringing design, began well after NatureSweet's Trademark and Trade Dress had acquired great strength and consumer recognition in the marketplace.

88. Defendant was aware of NatureSweet's Trademark and Trade Dress, including knowledge of U.S. Registration No. 3,359,569, before it began use of the confusingly similar package design complained of herein.  Defendant has been aware of U.S. Registration No. 3,359,569 since at least 2012.

89. Defendant was aware of NatureSweet's Trademark and Trade Dress before it began advertising, promoting and offering its ANGEL SWEET product bearing the confusingly similar package design for sale.

90. Defendant's commercial use of the Trademark and Trade Dress is in interstate commerce and is without the permission or authority of NatureSweet.

91. Defendant's package design is a reproduction, copy, or colorable imitation of NatureSweet's Trademark and Trade Dress.  Defendant's infringing package design is used in conjunction with the Defendant's ANGEL SWEET grape tomatoes that are sold within the state of Texas and which are distributed through Defendant's Laredo facility.

92. Defendant's unauthorized commercial use of its package design is likely to cause confusion, or to cause mistake, or to deceive consumers and potential consumers of

NatureSweet and Defendant as to the affiliation, connection, or association of Defendant with NatureSweet, or as to origin, sponsorship or approval of Defendant's goods, or commercial activities of NatureSweet.

93.    Defendant's unauthorized use of its confusingly similar package design falsely indicates to the purchasing public that Defendant, its business, and its goods or services originate with NatureSweet, or are affiliated, connected, or associated with NatureSweet, or are sponsored, endorsed, or approved by NatureSweet, or are in some manner related to NatureSweet or its goods and services.

94.    Defendant's unauthorized use of its confusingly similar package design falsely designates the origin of Defendant's goods, and falsely or misleadingly describes and represents facts with respect to Defendant and its goods.

95.    Defendant's unauthorized use of its confusingly similar package design enables Defendant to trade on and receive the benefit and goodwill built up at great labor and expense by NatureSweet, and to gain acceptance for Defendant's goods based on the reputation and goodwill of NatureSweet, its goods, and its registered product design and Trade Dress.

96.    Defendant's unauthorized use of its confusingly similar package design enables Defendant to palm off its goods on the unsuspecting public as those of NatureSweet.

97.    Defendant's unauthorized use of its confusingly similar package design removes from NatureSweet the ability to control the nature and quality of goods and services associated by consumers with its marks, and places the valuable reputation and goodwill of NatureSweet in the hands of Defendant, over whom NatureSweet has no control.

98.    As a result of Defendant's unauthorized use of its confusingly similar package design, Defendant is being unjustly enriched at the expense of NatureSweet and the public.

99.     Defendant has damaged NatureSweet's goodwill and reputation and is continuing to damage NatureSweet's goodwill and reputation by its illegal acts. Unless Defendant is restrained by this Court, Defendant will continue to cause irreparable injury to NatureSweet and the public for which there is no adequate remedy at law.

**Willful Nature of Defendant's Wrongful Acts**

100.     Defendant's acts complained of herein have been deliberate, willful, intentional, and in bad faith, with full knowledge and conscious disregard of NatureSweet's rights.

101.     Indeed, this is not the first attempt by Defendant to willfully and intentionally trade off of the goodwill of NatureSweet.  In 2012, Defendant introduced a competing grape tomato in a two-piece plastic package.  NatureSweet filed a lawsuit against Defendant on May 22, 2012 in the Northern District of Texas. Case No. 3:12-cv-01424-G-BN. In 2021, Defendant introduced a different competing grape tomato in a two-piece plastic package. NatureSweet filed a lawsuit against Defendant on August 2, 2021 in the Western District of Texas.  Case No. 5:21-cv-00726-XR.  Subsequent to each lawsuit, Defendant sold grape tomatoes in the top-seal packaging shown in paragraph 11 emphasizing the color green.

102.     Unfortunately, Defendants reverted to trading off the goodwill of NatureSweet in 2023 again.  Defendant's intentional promotion of its products with its copycat package design that is confusingly similar to NatureSweet's Trademark and Trade Dress amounts to a fraud on the public.

103.     In view of the egregious nature of Defendant's actions, this is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

### COUNT I: Federal Trademark Infringement

104.    NatureSweet repeats the allegations above as if fully set forth herein.

105.    The acts of Defendant complained of herein constitute trademark infringement, use in commerce of a reproduction, copy, or colorable imitation of NatureSweet's federally registered trademark (U.S. Registration No. 3,359,569) on or in connection with the sale, offering for sale, distribution, or advertising of goods or services in violation of 15 U.S.C. § 1114(1).

106.    NatureSweet has been damaged by Defendant's acts in violation of 15 U.S.C. § 1114(1). NatureSweet is entitled to injunctive relief, and NatureSweet is entitled to recover at least Defendant's profits, NatureSweet's actual damages, enhanced damages/profits, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1116, and 1117.

107.    In view of the nature of Defendant's acts in violation of 15 U.S.C. § 1114(1) complained of herein, and/or Defendant's willfulness and bad faith, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

### COUNT II: Trade Dress Infringement

108.    NatureSweet repeats the allegations above as if fully set forth herein.

109.    The acts of Defendant complained of herein constitute trade dress infringement in violation of 15 U.S.C. § 1125(a). Defendant's use of NatureSweet's Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendant with NatureSweet and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with NatureSweet.

110.    NatureSweet's Trade Dress is entitled to protection under the Lanham Act. NatureSweet's Trade Dress includes unique, inherently distinctive and non-functional designs. NatureSweet has extensively and continuously promoted and used its Trade Dress in commerce in the United States. Through that extensive and continuous use, NatureSweet's Trade Dress has become a well-known indicator of the origin and quality of NatureSweet's tomato products. NatureSweet's Trade Dress has also acquired substantial secondary meaning in the marketplace. Moreover, NatureSweet's Trade Dress acquired this secondary meaning before Defendant commenced its unlawful use of NatureSweet's Trade Dress in connection with the infringing products.  Additionally, of all of the possibilities, including using the top seal packaging Defendant has used for several years demonstrating the non-functionality of Nature Sweet's Trade Dress, Defendant instead chose to imitate and trade on the goodwill of NatureSweet in a clear effort to cause confusion with NatureSweet's distinctive packaging design for its CHERUBS grape tomatoes.

111.    NatureSweet has been damaged by Defendant's unlawful use of NatureSweet's Trade Dress and, unless enjoined, Defendant's unlawful use of NatureSweet's Trade Dress will continue to cause substantial and irreparable injury to NatureSweet for which NatureSweet has no adequate remedy at law. The injury to NatureSweet includes at least substantial and irreparable injury to the goodwill and reputation for quality associated with NatureSweet, NatureSweet's Trade Dress, and NatureSweet's tomato products.

112.    Defendant's use of NatureSweet's Trade Dress has been intentional, willful, and malicious. Defendant's bad faith is evidenced at least by the similarity of the infringing product design to NatureSweet's Trade Dress, as demonstrated above, and by Defendant's continuing disregard for NatureSweet's rights.

113.   NatureSweet is entitled to injunctive relief, and NatureSweet is entitled to recover at least Defendant's profits, NatureSweet's actual damages, enhanced damages/profits, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT III: Federal Unfair Competition

114.   NatureSweet repeats the allegations above as if fully set forth herein.

115.   The acts of Defendant complained of herein constitute trademark and trade dress infringement, use in commerce of false designations of origin, false or misleading descriptions or representations of fact on or in connection with goods or services, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

116.   NatureSweet has been damaged by Defendant's acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein.

117.    The nature of Defendant's acts in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) complained of herein and/or Defendant's willfulness and bad faith, make this an exceptional case under 15 U.S.C. § 1117, and infringement in violation of 15 U.S.C. § 1125(a).

## COUNT IV: Trademark and Trade Dress Infringement
## Under the Common Law of Texas

118.   NatureSweet repeats the allegations above as if fully set forth herein.

119.   The acts of Defendant complained of herein constitute trademark and trade dress infringement in violation of the common law of Texas

120.   NatureSweet has been damaged by Defendant's acts common law trademark and trade dress infringement.

## **COUNT V: Injury to Business Reputation or Trademark or Trade Dress Under Texas**

## **Business and Commerce Code**

121.     NatureSweet repeats the allegations above as if fully set forth herein.

122.     The acts of Defendant complained of herein are likely to cause injury to NatureSweet's business reputation and to dilute the distinctive quality of each NatureSweet's Trademark and Trade Dress, in violation of Texas Anti-Dilution Statute, Tex. Bus. & Com. Code § 16.29.

123.     NatureSweet has been damaged by Defendant's acts of injury to business reputation and dilution in violation of the Texas Anti-Dilution statute.

## **COUNT VI:  Texas Common Law Unfair Competition**

124.     NatureSweet repeats the allegations above as if fully set forth herein.

125.      The acts of Defendants complained of herein constitute trademark and trade dress infringement, false designations of origin, false advertising, dilution and other unfair competition in violation of Texas common law.

126.     NatureSweet has been and continues to be damaged by Defendants' conduct in an amount to be determined at trial.

127.     Upon information and belief, Defendants' conduct is willful, deliberate, intentional and in bad faith.

128.     By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to NatureSweet. NatureSweet has no adequate remedy at law to address these injuries.

## COUNT VII: Unjust Enrichment

129.    NatureSweet repeats the allegations above as if fully set forth herein.

130.    Defendant has been and continues to be unjustly enriched at the expense of NatureSweet by Defendant's acts complained of herein.

131.    NatureSweet has been damaged by Defendant's acts of unjust enrichment.

## JURY DEMAND

NatureSweet demands a jury trial in accordance with Fed. R. Civ. P. 38(b).

**PRAYER FOR RELIEF**

WHEREFORE, NatureSweet requests entry of judgment against Defendant as follows:

1.      That Defendant, its affiliates, subsidiaries, related companies, and all those acting in concert or participation with them be permanently enjoined and restrained from:

        (a)      manufacturing, purchasing, acquiring or otherwise using the confusingly similar package design shown in paragraph 77 or any other design that are likely to cause confusion with NatureSweet's Trademark or Trade Dress;

        (b)      otherwise competing unfairly with NatureSweet in any manner, including, without limitation, unlawfully adopting or using any other package design that is likely to cause confusion with NatureSweet's Trademark or Trade Dress;

        (c)      committing any acts or making any statements calculated, or the reasonably foreseeable consequence of which would be, to infringe or likely to dilute NatureSweet's registered product design or Trade Dress, or to confuse, mislead, or deceive consumers as to the affiliation, connection, or association of Defendant with NatureSweet or as to the origin, sponsorship, or approval of Defendant's goods or commercial activities by NatureSweet; and

        (d)      conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a), (b), and (c) above;

2.      That, Defendant, its affiliates, subsidiaries, related companies, and all those acting in concert or participation be ordered to:

    (a)      remove from all websites any depiction of references to Defendant's infringing package design;

    (b)      recall and provide proof to the Court of the recall of all packaging consisting of the infringing package design; and

    (c)      recall and provide proof to the Court of the recall of any and all advertising or promotional or other materials pertaining to the infringing package design and all product bearing the infringing package design, regardless of the medium on which such advertising, promotional, or other materials are contained;

3.      That Defendant be required to file with this Court and to serve upon NatureSweet within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant complied with the injunction;

4.      That Defendant be required to account for, and turn over to NatureSweet, all profits realized as a result of its infringement and other unlawful acts, such award of profits to be increased as the Court finds just under the circumstances of this case;

5.      That NatureSweet be awarded its actual damages and defendant's profits and that said damages/profits be trebled;

6.      That NatureSweet be awarded its attorney's fees pursuant to 15 U.S.C. § 1117(a), or other applicable law;

7.      That NatureSweet be awarded its costs of this action, and prejudgment and post-judgment interest;

8.      That NatureSweet be awarded exemplary damages; and

9.      That NatureSweet be granted such other and further relief, at law or in equity, as the Court may deem just and proper.

**DATED** this 12th day of April 2023.

Respectfully submitted,

/s/ *Larry D. Warren*

LARRY D. WARREN
ATTORNEY-IN-CHARGE
State Bar No. 20888450
FBN: 13339
**ATTORNEYS FOR PLAINTIFF**
**NS BRANDS, LTD**

OF COUNSEL:

NAMAN HOWELL SMITH & LEE, PLLC
10001 Reunion Place, Suite 600
San Antonio, Texas 78216
Telephone: (210) 731-6350
Facsimile:  (210) 785-2950
lwarren@namanhowell.com