UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**NS BRANDS, LTD,**

  *Plaintiff*,

v.                                                               Case No.  SA-23-CV-00445-JKP

**MASTRONARDI PRODUCE LTD,**
**MASTRONARDI PRODUCE-USA,**
**INC.,**

  *Defendants*.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendants Mastronardi Produce Ltd. and Mastronardi Produce-USA, Inc.'s (hereinafter "Mastronardi") Motion to Dismiss. *See* ECF Nos. 15, 16 (redacted and unredacted versions). Plaintiff NS Brands, Ltd. (hereinafter "NatureSweet") filed a response and Mastronardi filed a reply. *See* ECF Nos. 19, 20, 22, 23. The Court held a hearing on the motion on November 16, 2023. After due consideration of the parties' briefings, arguments, and the applicable law, the Court **DENIES** the motion. *See* ECF Nos. 15, 16.

**BACKGROUND**

This case arises out of a trademark dispute between grape tomato sellers over packaging used by market leader NatureSweet and its closest competitor Mastronardi. NatureSweet alleges Mastronardi's packaging mimics NatureSweet's trademarked, two-piece plastic container consisting of a solid yellow opaque base or lid with a clear transparent dome. NatureSweet describes the packaging's recognizable common characteristics to include: (1) a plastic two-piece configuration with (2) a solid yellow base, (3) the lid including curved edges, (4) a

transparent dome, (5) labeling placed on the end of the transparent dome, and (6) celestial motifs presented through labeling. NatureSweet registered its package design as a trademark under U.S. Registration No. 3,359,569, issued on December 25, 2007. Prior to introduction of NatureSweet's package design, tomatoes were typically sold in clam shell containers or in bulk. NatureSweet's use of its package design has been exclusive since it was first introduced 17 years ago and customers have come to associate the package with NatureSweet's product. Indeed, NatureSweet has spent millions of dollars advertising and promoting its tomatoes using its trademarked package.

NatureSweet alleges Mastronardi intentionally chose a package design for its grape tomatoes that is similar to NatureSweet's packaging to cause customer confusion, trade on NatureSweet's goodwill, and increase Mastronardi's market share. From 2014 until 2023, Mastronardi packaged its grape tomatoes in a green, top seal type container. Mastronardi then adopted packaging similar to NatureSweet's trademarked packaging for its 10 oz. grape tomato containers. Mastronardi sells its tomatoes to the same retailers as NatureSweet, such as Whole Foods, Meijer, Food Lion, and others.

This is not the first time the parties have been involved in litigation. NatureSweet sued Mastronardi in the Northern District of Texas in 2012 over its label and in the Western District of Texas in 2021 over packaging similar to the packaging that is the subject of this litigation. *See* Case No. 3:12-cv-01424-G-BN; and Case No. 5:21-cv-00726-XR. Both cases settled. After the 2021 settlement, Mastronardi resorted back to using its green, top seal package. In 2023, however, Mastronardi switched to new packaging that is the subject of this lawsuit.

In the instant case, NatureSweet sues Mastronardi for trademark infringement, trade dress infringement, and unfair competition in violation of Sections 32(1) and 43(a) of the Federal

Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a) and under the laws of the State of Texas. NatureSweet seeks, among other things, injunctive relief, actual damages, an accounting of Mastronardi's products, and recovery of NatureSweet's reasonable costs and attorneys' fees. Mastronardi moves for the Court to dismiss the case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed herein, the Court finds NatureSweet has plausibly alleged its claims for trademark infringement and trade dress infringement, as well as its derivative claims, and may therefore proceed at this stage of the litigation.

## LEGAL STANDARD

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.; see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## ANALYSIS

Mastronardi offers four reasons why the Court should dismiss NatureSweet's complaint pursuant to Rule 12(b)(6): (1) Mastronardi's packaging is too dissimilar from NatureSweet's trademark to support viable a trademark infringement claim; (2) NatureSweet's definition of its trademark dress in its complaint is too expansive and too vague to support a trademark dress infringement claim; (3) NatureSweet should be estopped from bringing its trade dress infringement claim by the parties' 2021 settlement agreement; and (4) NatureSweet's remaining claims are derivative of its trademark claims and should be dismissed as well. The Court considers each of these arguments, in turn, below.

### I. Trademark Infringement

To state a claim for trademark infringement under the Lanham Act, a plaintiff must allege facts which show "the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). Mastronardi does not dispute NatureSweet has alleged a legally protectable

trademark, so the question before the Court is whether NatureSweet plausibly alleged a likelihood of confusion. Courts assess the likelihood of confusion by applying the following 8 factors: "(1) strength of the plaintiff's mark; (2) similarity of design between marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential users." *Id*.

Mastronardi encourages the Court to dismiss NatureSweet's trademark infringement claim without considering all eight factors because, according to Mastronardi, the marks are too dissimilar for the Court to find a likelihood of confusion. To support its argument, Mastronardi cites caselaw suggesting a court may dismiss a trademark infringement claim based on the dissimilarity of the marks alone. *See John Crane Prod. Sols. Inc. v. R2R and D, LLC*, No. 3:11-CV-3237-D, 2012 WL 1571080, at *3 (N.D. Tex. May 4, 2012); *Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, No. 22-148, 2023 WL 3872519, at *8 n.2 (Jun. 8, 2023); *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 428–29 (5th Cir. 2021). NatureSweet takes issue with Mastronardi's characterization of the caselaw, arguing that, to the contrary, this Court would err if it were to focus on the "design similarity" digit of confusion to the exclusion of the other seven digits of confusion.

Indeed, at the summary judgment stage, well-established law provides that "[n]o one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). The caselaw Mastronardi cites refers to the unusual case where, in considering a Rule 12(b)(6) motion to dismiss, a court finds the complaint's factual allegations regarding consumer confusion are so implausible that dismissal is warranted. *See*

*Alder v. McNeil Consultants*, 10 F.4th at 428–29. This is not such a case. Mastronardi highlights differences between its packaging and NatureSweet's mark as evidence that consumer confusion is implausible. However, similarities between the packaging, not differences, cause customer confusion. In this case, the packages contain similarities. The Court includes images of the companies' packaging below for comparison: NatureSweet's product is on the left, NatureSweet's registered trademark is in the center, and Mastronardi's product is on the right.



Whether similarities between these packages are enough to give rise to a viable trademark infringement claim is a question for a later stage of the litigation. At the motion to dismiss stage, however, the Court need only address whether NatureSweet plausibly alleged Mastronardi infringed its trademark. Here, the similarity of the marks include: (1) a three-dimensional package configuration comprised of (2) an opaque bottom and (3) a transparent dome-like top finished with (4) an opaque enclosure. Contrary to Mastronardi's contentions, the absence of a "bowl-shaped" bottom and "bubble design effect" do not make Mastronardi's packaging so dissimilar from NatureSweet's mark that the complaint's facial plausibility is defeated.

Furthermore, as NatureSweet details in its response, NatureSweet's complaint alleged all eight digits of confusion. *See* ECF No. 20 at 13–14. These allegations, when taken as true and viewed in the light most favorable to NatureSweet, allow the Court to plausibly infer a likelihood of confusion. For example, NatureSweet alleges use of its distinct, trademarked packaging has

been exclusive in the marketplace for over a decade. NatureSweet further alleges Mastronardi has historically trailed NatureSweet in the market for grape tomatoes and intentionally chose to use similar packaging to trade on NatureSweet's goodwill. Finally, NatureSweet alleges actual confusion has occurred in the marketplace, where retailers commonly intermix and mistake the two companies' products. For these reasons, the Court finds NatureSweet plausibly alleged its trademark infringement claim, which shall proceed at this stage of the litigation.

## II.   Trademark Dress Infringement

In addition to trademark infringement, the Lanham Act provides a cause of action for trade dress infringement. 15 U.S.C. § 1125(a). "'Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product.'" *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (quoting *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998)). With trade dress, the question is whether the "combination of features creates a distinctive visual impression, identifying the source of the product." *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 251 & n.3 (5th Cir. 1997).

As with a trademark infringement claim, a plaintiff plausibly alleges a trade dress infringement claim by alleging facts which show (1) the trade dress qualifies for protection and (2) the defendant's use of the trade dress creates a likelihood of confusion. *Pebble Beach*, 155 F.3d at 536. Trade dress, moreover, is only entitled to legal protection if it is non-functional. *Id*. Courts assess the likelihood of confusion in a trade dress infringement claim by applying the same "digits of confusion" analysis used in trademark infringement claims. *Bd. of Supervisors*

*for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).

The Court already determined NatureSweet plausibly alleged a likelihood of confusion. Furthermore, Mastronardi does not argue NatureSweet's alleged trade dress is functional. The question before the Court, therefore, is whether NatureSweet's alleged trade dress qualifies for protection. To qualify for legal protection, a trade dress must be inherently distinctive or have achieved secondary meaning in the public's mind; that is, it must have "come through use to be uniquely associated with a specific source." *Pebble Beach*, 155 F.3d at 536. (internal quotations and citations omitted).

"In the trade secret context, a plaintiff must articulate the elements that comprise its protected trade dress in order for the court to evaluate the plausibility of its claim and so the defendant has fair notice of the grounds of the claim." *N.Y. Pizzeria, Inc. v. Syal*, 56 F. Supp. 3d 875, 882–83 (S.D. Tex. 2014). "All types of intellectual property, including unregistered trade dress, must have clearly defined boundaries of what is alleged to be the zone of exclusive rights." 1 McCarthy on Trademarks and Unfair Competition § 8:3 (4th ed.) (citing *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). "[A] vague, broad and non-specific definition of trade dress not only makes it impossible for a court to apply the test of distinctiveness, but also raises the danger of overprotection, with resulting anti-competitive injury to competitors...." *Id*. Faced with a vague definition of a plaintiff's asserted rights, competitors are left to guess as to how to design a non-infringing product and are handicapped in defending against the plaintiff's claim of infringement. *Id*.

Mastronardi suggests NatureSweet's trade dress is impermissibly vague and, by not defining the elements of its trade dress with particularity, NatureSweet fails to give notice of the

proper boundaries of its claimed rights. To support its contention, Mastronardi notes NatureSweet's complaint offers three different definitions of its trade dress. Indeed, NatureSweet's complaint includes the following characterizations of its trade dress:

> "…(1) a plastic two-piece configuration with (2) solid yellow base, (3) the lid including curved edges, (4) a transparent dome, and (5) labeling placed on the end of the transparent dome, and (6) celestial motifs presented through labeling…."
>
> "…product packaging that include the use of: (1) a yellow opaque plastic lid with (2) a clear transparent dome…."
>
> "…(1) a plastic two-piece configuration with (2) a solid yellow lid, (3) the lid including curved edges, (4) a transparent dome, and (5) the transparent dome including a circular end…."

*See* ECF No. 13 at 13 ¶ 59. Mastronardi argues the second definition—of a yellow opaque plastic lid with a clear transparent dome—is impermissibly broad. Furthermore, Mastronardi argues differences between the definitions create confusion for competitors. To be sure, NatureSweet's trade dress as articulated is confusing. The first and third definitions, for example, refer alternatively to a yellow "base" or "lid" and then a "lid including curved edges." Presumably NatureSweet is referring to the yellow piece of plastic that sits at the bottom of the container. But NatureSweet should decide whether to refer to it as a "base" or "lid" and then be consistent throughout its definition. Furthermore, the Court agrees with Mastronardi's contention that the meaning of "celestial motifs" is unclear.

That being said, even NatureSweet's broadest definition of its trade dress is sufficiently specific to provide notice of what NatureSweet claims is protectable. NatureSweet cites Fifth Circuit authority for the premise that a two-element trade dress, such as "a yellow opaque plastic lid with a clear transparent dome," is sufficiently specific. In *Alpha Kappa Alpha Sorority, Inc. v. Converse Inc.*, the Fifth Circuit held the district court committed reversable error in dismissing a

trade dress claim based on Greek organizations' unique "founding years and organizational colors" combinations. 175 Fed. App'x 672, 677 (5th Cir. 2006). The Fifth Circuit noted that, in developing their case, the plaintiffs would need to provide evidence of inherent distinctiveness or secondary meaning to establish their trade dress was protectable. *Id*. at 679. At the motion to dismiss stage, however, the Fifth Circuit found the two-element "founding years and organizational colors" trade dress adequately apprised the defendant of the cause of action. *Id*. The Court notes the Greek "founding years and organizational colors" trade dress at issue in the *Alpha Kappa Alpha* case is distinguishable from the plastic grape tomato packaging in this case. Even so, NatureSweet cites two district court cases that are more factually analogous to the case at bar and applied similar reasoning to the *Alpha Kappa Alpha* case. Specifically, district courts have allowed two-element trade dress claims to proceed in cases regarding a "yellow cap and round tub" toy packaging and a "transparent, octagonal plastic container, with a green-colored lid." *Viahart, LLC v. Chickadee Bus. Sols., LLC*, 2021 WL 6333033, *10 (E.D. Tex. 2021), *RR adopted*, 2022 WL 1262125; *see also Industrias Wet Line S.A. de C.V. v. Multy Brands Distributors, Corp.*, 144 F. Supp. 3d 262, 267 (D.P.R. 2010). Similarly, in this case, NatureSweet's two-element trade dress of "a yellow opaque plastic lid with a clear transparent dome" is sufficiently specific to put Mastronardi on notice of the basis for its claim.

Because the Court finds NatureSweet's broadest definition is sufficiently specific to provide notice of what NatureSweet claims as its protectable trade dress, the Court finds it unnecessary to dismiss NatureSweet's suit for failure to adequately identify its trade dress. Though not dismissing NatureSweet's claims, this Court will require unclear elements to be more specifically defined in future stages of the litigation.

**III.    Estoppel**

Mastronardi argues NatureSweet's trade dress claims should be dismissed because NatureSweet adopted a different definition of its trade dress in the parties' 2021 settlement agreement and, therefore, is estopped from alleging new trade dress definitions in this case. As an initial matter, NatureSweet argues consideration of the settlement agreement is improper on a Rule 12(b)(6) motion. Indeed, courts are generally prohibited from looking beyond the pleading in ruling on a motion to dismiss unless a document is (1) attached to the motion to dismiss, (2) "referred to in the plaintiff's complaint[,]" and (3) "central to the plaintiff's complaint." *Scanlon v. Texas A&M University*, 343 F.3d 533, 536–37 (5th Cir. 2003). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

In this case, Mastronardi attaches the settlement agreement to its motion, and while the settlement agreement is not explicitly referenced in the plaintiff's complaint, the complaint references prior lawsuits and states that matters were "concluded" at least twice. *See* ECF No. 13 at 3, 4 ¶¶ 11, 14. Presumably, this reference refers to the parties' 2021 settlement agreement. Whether the 2021 settlement agreement is "central" to the plaintiff's complaint is another matter. The complaint references prior litigation to illustrate the parties' ongoing disagreement over similarities in their packaging. But NatureSweet does not rely on the parties' 2021 settlement agreement to establish an element of its trade dress infringement claim. The settlement agreement is central to Mastronardi's defenses, not NatureSweet's complaint. For this reason, the

Court agrees with NatureSweet's contention that consideration of the settlement agreement at this stage of the litigation is improper.

Mastronardi alternatively suggests the Court should take judicial notice of the 2021 settlement agreement. To support its argument, Mastronardi notes courts may take judicial notice of prior court proceedings as matters of public record. *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981). The problem with that argument, however, is the 2021 settlement agreement up to this point has not been part of the public record. The parties' agreement was not entered in the record in the 2021 case. *See* Case No. 5:21-cv-00726-XR. In the case at bar, the parties filed their unredacted briefings under seal, to maintain their 2021 settlement agreement's confidentiality. In general, the Court disfavors maintaining filings under seal, particularly when those filings contain judicial records. *See* W.D. Tex. Civ. R. 5.2(b); *June Medical Services, L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022). The Court highlighted this issue for the parties and gave them an opportunity to explain why the judicial record should remain under seal. *See* ECF No. 39. Neither party did so. The Court, therefore, unseals the parties' briefings, consistent with the Court's duty to maintain the public's right of access to judicial records. *June Medical Services, L.L.C. v. Phillips*, 22 F.4th at 521.

Mastronardi argues that, under the doctrine of estoppel by contract, NatureSweet may not take a position inconsistent with the parties' 2021 settlement agreement to the prejudice of Mastronardi. *See Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721–22 (Tex. App.—Dallas 2004, no pet.). According to Mastronardi, NatureSweet's definitions of its trade dress in the instant action are impermissibly different from, and inconsistent with, the trade dress definition in the settlement agreement. NatureSweet concedes its trade dress definitions in the instant action are different from the definition in the parties' settlement agreement, but not

impermissibly so. NatureSweet says it articulated its trade dress differently in this case because this case pertains to different products and is based on different rights than the case giving rise to the parties' 2021 settlement agreement. The parties will have an opportunity to provide further argument and evidence of their respective positions on summary judgment. Consideration of Mastronardi's estoppel defense at this stage of the litigation, however, is premature.

Mastronardi's estoppel argument is an affirmative defense not generally suited for resolution on a Rule 12(b)(6) motion. The Court, therefore, denies Mastronardi's motion on estoppel grounds without prejudice to refiling in a motion for summary judgment.

## IV. Derivative Claims

Because the Court rejects Mastronardi's challenges to NatureSweet's trademark infringement and trademark dress infringement claims, and Mastronardi concedes NatureSweet's remaining claims are derivative of its trademark and trade dress infringement claims, the Court rejects Mastronardi's motion to dismiss NatureSweet's derivative claims.

## CONCLUSION

For the reasons discussed, the Court finds NatureSweet has plausibly alleged its case sufficiently to survive Mastronardi's Rule 12(b)(6) challenge. Mastronardi's Motion to Dismiss is, therefore, **DENIED**. *See* ECF Nos. 15, 16.

Consistent with the Court's duty to maintain the public's right of access to judicial records, the Court unseals the parties' unredacted briefings. *See June Medical Services, L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022).

The Clerk of Court is **INSTRUCTED** to enter the unredacted Motion, Response, and Reply (ECF Nos. 16, 20, 23), and the documents attached thereto, into the docket unsealed.

It is so ORDERED.
SIGNED this 14th day of December, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE